UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RXAR COMPANY, LLC, | ) |
| Plaintiff | ) |
| | ) 3:14 C 0789 |
| v. | ) Hon. Marvin E. Aspen |
| | ) |
| RHEUMATOLOGY ASSOCIATES, P.A., | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Presently before us is Plaintiff RXAR Company, LLC's ("RXAR") motion for summary judgment. (Dkt. No. 72.) For the reasons stated below, we deny RXAR's motion.

## BACKGROUND

In May 2010, Metro Medical Supply, Inc. ("Metro"), a Tennessee corporation with its principal place of business in Nashville, Tennessee, "began selling and supplying pharmaceutical products and medical supplies . . . to AROC." (Dkt. No. 78 ¶¶ 1, 9.) AROC was an arthritis clinic incorporated by Dr. Suzanne Zorn in Raleigh, North Carolina in February 2000. (*Id.* ¶¶ 5–6, 21.) Dr. Zorn was "president of AROC's board of directors, an officer of the company, its sole stockholder, and was its only practicing physician." (*Id.* ¶ 7.) Mark Weiner, Dr. Zorn's husband, "was the practice manager and corporate secretary of AROC." (*Id.* ¶ 8.)

AROC signed a credit agreement to pay for the medical supplies from Metro and to pay certain costs of collection incurred by Metro Medical to collect past due amounts owed. (*Id.* ¶ 10.) After AROC defaulted on its obligation to pay Metro Medical for the Medical Goods supplied under the Credit Agreement, Metro filed suit in the Chancery Court of Davidson

County, Tennessee. (*Id.* ¶¶ 11–12.) On October 25, 2012, the Chancery Court granted summary judgment in favor of Metro, awarding it $302,123.84, with post-judgment interest accruing at 5.25%." (*Id.* ¶ 14.) On December 27, 2012 Metro sought to enforce its Tennessee judgment against AROC in North Carolina by filing a "notice of foreign judgment in Wake County, North Carolina Superior Court, and the judgment was domesticated on or around February 7, 2013." (*Id.* ¶ 15.)

AROC "ceased operating on January 11, 2013." (*Id.* ¶ 18.) At the time, AROC had four employees besides Dr. Zorn and Mr. Weiner. (*Id.* ¶ 22.) Sometime in December 2012, Dr. Zorn incorporated Defendant Rheumatology Associates, P.A. ("Rheumatology") in Raleigh, North Carolina. (*Id.* ¶¶ 16–17.) Dr. Zorn is the only practicing physician at Rheumatology, where she "treat[s] patients with rheumatic and arthritic related medical conditions," and is the sole stockholder, the president of its board of directors, and is an officer of the company. (*Id.* ¶¶ 25, 28.) "On January 14, 2013, Rheumatology Associates employed 3 out of the 4 AROC employees other than Dr. Zorn and Mr. Weiner." (*Id.* ¶ 23.) At its inception, Rheumatology also had the same telephone number, fax number, and address as AROC. (*Id.* ¶ 24.) Furthermore, "Dr. Zorn has continued to treat patients at Rheumatology Associates that she treated at AROC." (*Id.* ¶ 30.) AROC declared bankruptcy on July 23, 2013, and is "incapable of paying its debts, including the judgment debt owed to Metro Medical." (*Id.* ¶¶ 31, 33.)

On March 20, 2014, Metro filed a two-count complaint against Rheumatology, alleging state-law successor liability and fraudulent transfer claims. Metro, meanwhile, changed its name to Ashley Medical Supply, Inc. on April 17, 2015, and "assigned certain of its assets, including the claims in this litigation, to RXAR" on December 31, 2015. (*Id.* ¶¶ 2–3.) Like Metro Medical, RXAR is a Tennessee corporation with its principal place of business in Nashville,

Tennessee.  (*Id.* ¶ 4.)  On April 27, 2016, RXAR was substituted for Metro as the party plaintiff in this action.  (Dkt. No. 44.)

## LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (internal quotations omitted).  A genuine issue for trial exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).  Once the moving party meets that burden, the nonmoving party must "go beyond the pleadings" and identify those portions of the record showing that there is a genuine dispute of material fact.  *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553.  "[T]he party opposing the summary judgment motion must 'do more than simply show that there is some metaphysical doubt as to the material facts.'"  *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 800 (6th Cir. 1994)).  At the summary judgment stage, "inferences to be drawn from the underlying facts must be viewed in the light most favorable" to the nonmoving party.  *Clayton v. Meijer, Inc.*, 281 F.3d 605, 609 (6th Cir. 2002).

**ANALYSIS**

RXAR argues that Rheumatology is a "mere continuation" of AROC and therefore liable to RXAR for the October 25, 2012 Chancery Court judgment against AROC. (Pl.'s Mem. ISO Mot. for Summ. J. (Dkt. No. 73) at 7.) Specifically, RXAR argues that Rheumatology is a "mere continuation" of AROC because AROC transferred its assets to Rheumatology without payment, Rheumatology is continuing AROC's business, Rheumatology and RXAR share an officer who was "instrumental in the transfer" of AROC's assets, and AROC is incapable of paying its debts. (*Id.* at 8–10.) Rheumatology contends that there is a genuine issue as to whether certain items—such as AROC's employees, clients, and telephone numbers—are properly considered assets capable of being transferred, and as to whether AROC ever transferred any assets to Rheumatology. (Def.'s Resp. Br. (Dkt. No. 76) at 2–5.)

Under Tennessee law, a successor company generally cannot be held liable for the debts of its predecessor.[1] *Hopewell Baptist Church v. Se. Window Mfg. Co., LLC*, No. E2000–02699, 2001 WL 708850, at *4 (Tenn. Ct. App. June 25, 2001). However, if a successor is "merely a continuation" of its predecessor company, then it may be held liable for the predecessor's debts. *Id.* A successor company is a "mere continuation" of its predecessor if: (1) the predecessor "transfers its assets" to the successor; (2) the successor company "pays less than adequate consideration for the assets"; (3) the successor company continues the predecessor's business; (4) both companies "share at least one common officer who was instrumental in the transfer"; and (5) the predecessor company "is left incapable of paying its creditors." *IBC Mfg. Co. v. Velsicol Chem. Corp.*, No. 97–5340, 1999 WL 486615, at *3 (6th Cir. July 1, 1999)

---

[1] The parties assume Tennessee law applies here. (Pl.'s Mem. at 6; Def.'s Resp. Br. (Dkt. No. 76) at 1.)

(applying Tennessee law); *Mapco Exp., Inc. v. Interstate Entertainment, Inc.*, No. 3:08 C 1235, 2011 WL 12556959, at *17 (M.D. Tenn. Aug. 11, 2011) (same).

Rheumatology was incorporated in December 2012. (Dkt. No. 78 ¶¶ 16–17.) AROC closed on Friday, January 11, 2013, and Rheumatology opened on Monday, January 14, 2017 in the same leased space. (*Id.* ¶¶ 18–19, 24.) Rheumatology has the same telephone and fax number as AROC did prior to closing. (*Id.* ¶ 24.) Rheumatology also has the same president and sole practicing physician as AROC, the same practice manager, and is otherwise staffed entirely by former AROC employees. (*Id.* ¶¶ 7–8, 22–23, 25, 29.) All of these facts tend to show that Rheumatology is a mere continuation of AROC. There remain, however, genuine disputes of material facts concerning whether AROC transferred its assets to Rheumatology, precluding summary judgment.

RXAR argues the first and second elements of the "mere continuation" test are met because AROC transferred its "employees, fixtures, equipment, location, telephone number, fax number, . . . a significant number of patients, the good will of the company, and . . . going-concern value" to Rheumatology without compensation. (Pl.'s Mem. at 8.) As to Dr. Zorn's patients, RXAR states that client lists are a form of intangible asset that are routinely considered transferrable. (Pl.'s Reply (Dkt. No. 80) at 3.) In response, Rheumatology contends that AROC's employees, telephone number, fax number, and customers are not properly considered "assets." (Def.'s Resp. at 2–4.) Client lists, it argues, "may have some value to a creditor when applied to a non-medical business (such as a seller of tangible goods) or a business where clients are contractually obligated to that business to continue as a client thereof," but do not have such value in a medical practice setting. (*Id.* at 2.) Indeed, Dr. Zorn stated explicitly that, in the medical profession, "[p]eople don't pay for [patient lists]." (Zorn Dep.

5

(Dkt. No. 14–1 at Pg. ID#: 95.) Because "patients are not automatically transferred, but rather have the option to continue seeing the same physician at any practice they may be an employee or owner in, or the patient may elect to collect their records and seek treatment elsewhere," patients are not "assets" that can be transferred from a predecessor to successor company. (*Id.* 2–3.) Furthermore, Rheumatology argues "patients of any physician employed at a medical practice are not patients of the practice itself, but rather of the treating physician," such that AROC was incapable of "transferring" any patients to Rheumatology. (*Id.* at 1.)

To be sure, customer lists are intangible assets capable of being transferred from predecessor to successor. *See, e.g.*, *Bogart v. Phase II Machs., Inc.*, 817 F. Supp. 547, 549 (E.D. Pa. 1993) (finding that a customer list is an intangible asset capable of being transferred). Moreover, Dr. Zorn's "goodwill in terms of contacts and experience" may very well have influenced some of the patients who sought treatment from her at AROC to continue doing so when she moved to Rheumatology. (Pl.'s Reply at 3 (quoting *Warne Invs., Ltd. v. Higgins*, 195 P.3d 645, 652 (Ariz. Ct. App. 2008).) *See Stoumbos v. Kilimnik*, 988 F.2d 949, 962 (9th Cir. 1993) (applying Washington law in a bankruptcy appeal and finding it possible that a successor was a mere continuation of its predecessor in part because "there was no payment for the employee base, customer relations and other intangible assets"). While customer lists are intangible assets that are capable of being transferred from predecessor to successor, RXAR has not shown, such that no reasonable factfinder could find otherwise, that Dr. Zorn's list of patients is sufficiently like a "customer list" or that AROC was even capable of transferring Dr. Zorn's patients to Rheumatology similar to how customer lists are transferred between predecessor and successors.

Rheumatology also argues RXAR has failed to show that AROC transferred any physical assets to Rheumatology. While Rheumatology acknowledges that some physical items were "used by Dr. Zorn in the operation of both AROC and "[Rheumatology]," those items were "personal furniture owned exclusively by her the entire time. (Def.'s Resp. at 4–5.) RXAR relies on the following deposition testimony of Dr. Zorn to show that AROC transferred its physical assets to Rheumatology:

> **Counsel**: Okay. And so when A.R.O.C. shut its doors, without everything out of that leased space, was there any furniture? Was there any computer?
>
> **Dr. Zorn**: No. There was my personal furniture. There's things that are attached to the walls that are not transferable.
>
> **Counsel**: Okay. So you left your personal furniture?
>
> **Dr. Zorn**: Uh-huh.
>
> **Counsel**: And you left – what would be attached to the walls? Are these like pictures? Are they –
>
> **Dr. Zorn:** Well there's pictures attached to the walls. There are desks and filing cabinets that are attached to the walls. There's cabinets that were there when I moved in that are attached to the walls.
>
> **Counsel:** Okay. Was any of that sold to Rheumatology – or R.A., as we're going to call it at this examination?
>
> **Dr. Zorn:** No.

(Pl.'s Mem. at 5–6 (Zorn Dep. at Pg. ID#: 77).)

This testimony is insufficient to show there is no genuine dispute that AROC transferred its physical assets to Rheumatology without consideration. RXAR focuses on Dr. Zorn's statement that items such as "desks and filing cabinets" were left when AROC ceased to exist, and then subsequently used by Rheumatology. (*Id.* at 6.) The above excerpt of Dr. Zorn's deposition testimony, though, shows only that she admitted some of the furniture in the space

7

used by both companies is her personal property, some furniture has been in the space since before she "moved in," and that Rheumatology did not pay for any of that furniture. While RXAR argues her testimony shows that AROC transferred its "fixtures" to Rheumatology without payment, she further testified that the space used by both AROC and Rheumatology was a leased space. (Dkt. No. 14–1 at Pg. ID#: 77.) There is therefore at least a genuine dispute as to whether the fixtures in the leased spaced were AROC's assets, such that it could transfer them to Rheumatology. *Cf.* Tenn. Code Ann. §§ 66–3–302(2), (10) (defining "asset" as "property of a debtor" and "property" as "anything that may be the subject of ownership" for the purposes of the Uniform Fraudulent Transfer Act)

Moreover, RXAR has put forth no evidence that AROC transferred any other physical assets to Rheumatology. For example, in AROC's bankruptcy petition, which RXAR attached as an exhibit to its statement of material facts in support of its motion for summary judgment, AROC disclosed that it possessed: appliances, medical exam tables, a television, several computers and monitors, a fax machine, a printer, and other miscellaneous office and medical equipment. (Dkt. No. 74–2 at Pg. ID#: 283–84.) That petition further indicates that, at the time of AROC's bankruptcy, all its principle assets were in storage. (*Id.* at Pg. ID#: 275.) That AROC still possessed this property when it filed its bankruptcy petition on July 23, 2013—six months after Rheumatology's inception—militates against a finding that AROC transferred its physical assets to Rheumatology. Mr. Weiner further testified that Rheumatology had to buy medical equipment, computers and computer equipment, a server, and new "run-of-the-mill office equipment," which also supports Rheumatology's assertion that it did not obtain such items from AROC. (Weiner Dep. (Dkt. No. 79) at Pg. ID#: 356.) Construing the facts in the

8

light most favorable to Rheumatology, we conclude a reasonable factfinder could find that AROC did not transfer its physical assets to Rheumatology.

Because we find at this time there is a genuine factual dispute as to whether and what kind of assets AROC transferred to Rheumatology, RXAR has also failed to show that Dr. Zorn, the common officer of AROC and Rheumatology, was "instrumental" in any such transfer, or that the transfer is responsible for AROC's inability to pay its debts. *See IBC Mfg. Co.*, 1999 WL 486615, at *3 ("An acquiring corporation will be deemed a mere continuation of the old corporation if: (1) a corporation transfers its assets; . . . (4) both corporations share at least one common officer who was instrumental in the transfer, and (5) the selling corporation is left incapable of paying its creditors.") Accordingly, we deny RXAR's motion for summary judgment on its successor liability claim.[2] *See, e.g.*, *Mapco Exp., Inc.*, 2011 WL 12556959, at *17 (finding plaintiff failed to present evidence that the predecessor's assets had been transferred to the defendant-successor for less than adequate consideration, such that there was no genuine factual dispute as to whether defendant was a "mere continuation" of its predecessor); *Signature Combs, Inc. v. United States*, 331 F. Supp. 2d 630, 641 (W.D. Tenn. 2004) (denying plaintiffs' motion for summary judgment in part because there was "no showing that substantially all of [the predecessor's] assets were transferred to [the successor]").

---

[2] RXAR also argues AROC transferred its assets to Rheumatology in violation of Tennessee's fraudulent transfer statutes. (Pl.'s Mem. at 10–15.) *See* Tenn. Cod. Ann. §§ 66–3–305, 306. We also deny RXAR's motion for summary judgment on its fraudulent transfer claim, because at this time there are genuine issues of material fact as to whether AROC transferred its assets to Rheumatology.

**CONCLUSION**

For the foregoing reasons, RXAR's motion for summary judgment is denied. It is so ordered.

_____
Marvin E. Aspen
United States District Judge

Dated: April 27, 2017
       Chicago, Illinois